UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EBONI ROFFLE, )<br><br>Plaintiff, )<br><br>v. )<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security )<br><br>Defendant. ) | Case No. 4:19-CV-02672-NCC |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the applications of Eboni Roffle ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 15), Defendant has filed a brief in support of the Answer (Doc. 18), and Plaintiff has filed a reply brief (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 12).

## I. PROCEDURAL HISTORY

Plaintiff previously received benefits for two period between 1998 and January 2013 (Tr. 41-42, 93-96). Most recently, on August 28, 2008, Defendant found Plaintiff was disabled as of March 7, 2006, due to limitations from congenital band heterotopia, adjustment disorder with disturbance of behavior, borderline intellectual functioning and learning disorder (Tr. 67-76). Plaintiff's benefits were discontinued in March 2013 when Defendant determined Plaintiff was no longer disabled as of January 2013 upon review of updated medical information (Tr. 93-96).

Plaintiff filed her current application for SSI on October 11, 2013 (Tr. 149-54).  Plaintiff's claim

was initially denied on January 29, 2014, and she filed a Request for Hearing before an

Administrative Law Judge ("ALJ") (Tr. 99-108).  After a hearing, by decision dated October 13,

2015, the ALJ found Plaintiff not disabled (Tr. 14-23).  On October 21, 2016, the Appeals

Council denied Plaintiff's request for review (Tr. 1-4).

On appeal by Plaintiff to the United States District Court for the Eastern District of

Missouri, the Honorable Henry Edward Autrey reversed and remanded the case on March 30,

2014 (Tr. 758-64).  Before Judge Autrey, Plaintiff argued that: (1) the ALJ erred in relying on

the Vocational Expert's ("VE") testimony, although the hypothetical question differed

significantly from the RFC finding; (2) the ALJ erred in failing to ask the VE if there were

conflicts between his testimony and the DOT; and (3) the ALJ erred in failing to consider

whether Plaintiff's borderline intellectual functioning equaled listing 12.05 (Tr. 762).  Judge

Autrey found:

> Defendant argues that none of the alleged errors are harmless, and attempts to establish
> that the decision is supported by substantial evidence on the record.  The Court disagrees.
> Under applicable law, the ALJ is required to pose hypothetical questions in accordance
> with the RFC finding.  The question posed by the ALJ allowed for the VE to consider
> jobs for which Plaintiff may not be capable of performing.
>
> Likewise, while the Commissioner argues that there were no conflicts between the VE's
> testimony and the DOT, and therefore, the fact that the ALJ did not ask the question is
> harmless, Plaintiff points out that there is indeed a significant conflict between the DOT
> and her level of education, which the ALJ asked the VE to consider.
>
> Plaintiff also urges consideration of the "adaptive-functioning inquiry on adaptive
> deficits" and "significant limitations in conceptual, social, or practical adaptive skills," as
> articulated in *Moore v. Texas*, 137 S.Ct. 1039 (2017).  The focus on adaptive deficits is
> consistent with the Social Security's concerns regarding updated medical understanding
> of intellectual disability.

(Tr. 762-63).  After a second hearing, by decision dated July 11, 2019, the ALJ found Plaintiff

not disabled (Tr. 634-47).  Upon remand from a federal court, the decision of the ALJ becomes

the final decision of the Commissioner after remand unless the Appeals Council assumes

jurisdiction of the case either pursuant to a request by a claimant or pursuant to its own authority.

20 C.F.R. § 404.984.  As neither occurred in this action, the ALJ's March 8, 2019 decision

stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since

July 22, 2013, the alleged onset date (Tr. 637).  The ALJ found Plaintiff has the severe

impairments of a seizure disorder and a full-scale IQ score of 62, but that no impairment or

combination of impairments met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 637-40).  After considering the

entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to

perform a full range of work with the following limitations (Tr. 640).  Plaintiff is limited to

simple and/or repetitive work not requiring close interaction with the public or coworkers (*Id.*).

Plaintiff cannot work with ladders, ropes, or scaffolds or work at unprotected dangerous heights

or around unprotected dangerous machinery (*Id.*).  Plaintiff cannot work alone around open

bodies of water or around open flames and cannot operate motorized vehicles (*Id.*).  The ALJ

found Plaintiff did not have any past relevant work but that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform such as photo machine operator

(DOT #207.685-014), housekeeper (DOT #323.687-014), and price marker (DOT #209.587-034)

(Tr. 645-46).  Thus, the ALJ concluded that Plaintiff has not been under a disability from July

22, 2013, through the date of the decision (Tr. 647).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative

decision which is supported by substantial evidence is not subject to reversal merely because

substantial evidence may also support an opposite conclusion or because the reviewing court

would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises four issues.  First, Plaintiff

argues that the ALJ failed to identify or resolve conflicts between Plaintiff's limited education

and the math or reading skills required for the cited jobs in the DOT's description (Doc. 15 at 7-

9).  Second, Plaintiff asserts that the ALJ failed to consider whether listing 12.05 was equaled

and failed to elicit a medical expert opinion to aid in that analysis (*Id.* at 9-11).  Third, Plaintiff

argues that the ALJ failed to analyze Plaintiff's cognitive deficit by considering the sufficiency

of adaptive deficits only and instead performed an outdated comparison of strengths to

weaknesses (*Id.* at 11-13).  Fourth, Plaintiff asserts that the ALJ's failure to follow this Court's

remand Order warrants remand under the law of the case doctrine (*Id.* at 13-15).  For the

following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's

decision is based on substantial evidence and is consistent with the Regulations and case law.[1]

## A. Conflict with the DOT

First, Plaintiff argues that the ALJ decision is not supported by substantial evidence

because the ALJ relied on vocational expert testimony in conflict with the DOT without

identifying or resolving that conflict (Doc. 15 at 7-9).  Specifically, Plaintiff asserts that the job

requirement of the three jobs identified by the vocational expert, photo machine operator (DOT

#207.685-014), housekeeper (DOT #323.687-014), and price marker (DOT #209.587-034),

---

[1] Plaintiff raises issues only as they relate to her intellectual functioning (*See generally* Doc. 15).
As such, the Court will not address Plaintiff's seizure disorder.

conflict with Plaintiff's limited abilities in the areas of math and reading (*Id.*).  Therefore, Plaintiff argues that there is a conflict between the DOT and the vocational expert's testimony and, as such, the vocational expert's testimony cannot constitute substantial evidence upon which that ALJ may rely (*Id.*).

At Step Five of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  To that end, Social Security Ruling 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the DOT.[2]  Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The ALJ must ask the VE if there is a conflict.  *Id.*  If there is an apparent conflict, the ALJ must then "elicit a reasonable explanation for the conflict before relying on the VE . . .  evidence to support a determination or decision about whether the claimant is disabled."  *Id.* at *2-*3.  The ALJ must also explain in his decision how he resolved the conflict.  *Id.* at *3.  Accordingly, "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the [DOT] unless there is evidence in the record to rebut those classifications."  *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997)).

In his opinion, the ALJ determined that, in addition to other restrictions, Plaintiff is limited to simple and or repetitive work not requiring close interaction with the public or coworkers (Tr. 640).  The ALJ thereafter determined that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including photo machine operator (DOT #207.685-014), housekeeper (DOT #323.687-014), and price marker (DOT

---

[2] U.S. Department of Labor (4th ed. rev. 1991) (hereinafter "DOT").  The Social Security Administration takes administrative notice of the DOT.  *See* 20 C.F.R. § 416.966(d)(1).

#209.587-034) (Tr. 646).  The ALJ specifically also found that the evidence did not indicate any conflicts between occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles and cited to Social Security Ruling 00-4p (*Id.*).  In doing so, the ALJ relied on the testimony of and written interrogatory response from vocational expert Delores Gonzalez ("Ms. Gonzalez") (Tr. 677-, 900-04).

During the March 13, 2019 hearing, the ALJ presented Ms. Gonzalez with a hypothetical question which included the limitations as indicated in the RFC (Tr. 678).  Ms. Gonzalez testified that Plaintiff could perform the jobs of photo machine operator (DOT #207.685-014), housekeeper (DOT #323.687-014), and price marker (DOT #209.587-034) (Tr. 678-79).  After the hearing, on April 16, 2019, the ALJ posed an additional interrogatory: "Are there any conflicts between your testimony and the Dictionary of Occupations [sic] Titles?" (Tr. 900).  Ms. Gonzalez responded: "No, I always testify using information from the *Dictionary of Occupational Titles*." (Tr. 903).  Given the opportunity to respond to this additional evidence, counsel raised an unrelated objection (Tr. 908-10).

The Court finds that the educational requirements of the jobs identified by the VE, and relied upon by the ALJ in his determination, do not create an apparent, unresolved conflict with Plaintiff's RFC.  As noted by Plaintiff, all three jobs require level 1 math which is defined as the ability to "[a]dd and subtract two-digit numbers.  Multiply and divide 10's and 100's by 2, 3, 4, 5.  Perform the four basic arithmetic operations with coins as part of a dollar.  Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." DOT #207.685-014, 323.687-014, 209.587-034.  These jobs also require level 1 language abilities which means that in the area of reading an individual has the ability to "[r]ecognize meaning of 2,500 (two- or three-syllable) words.  Read at a rate of 95-120 words per minute.

8

Compare similarities and difference between words and between series of numbers." *Id.* However, there is not an apparent conflict between these math and reading levels and Plaintiff's RFC limiting her to simple and or repetitive work not requiring close interaction with the public or coworkers. The ALJ did not limit Plaintiff regarding her math or language levels or otherwise indicate that Plaintiff could perform only occupations without any math or reading. Moreover, the level definitions are the upper limits across all jobs in the occupational category, not the requirements of every job within the category. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Indeed, the Eighth Circuit directs the Court to treat the DOT as "generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). When substantial evidence supports the hypothetical, as is the case here and addressed in more detail below, and when there is no conflict between the VE's testimony and the DOT, the articulation requirement of SSR 00-4p does not apply. *Moore*, 623 F.3d at 605 ("Because substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony."). As such, the Court finds that the ALJ posed a proper hypothetical to the VE; and that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform. Accordingly, the Court concludes that the ALJ's determination at Step Five is supported by substantial evidence.

**B. 12.05 Equivalency**

Next, Plaintiff asserts that the ALJ failed to address whether Plaintiff's cognitive deficit could equal listing 12.05, rather than precisely meeting it (Doc. 15 at 9-11). Plaintiff further asserts that the ALJ also improperly analyzed Plaintiff's cognitive deficit and failed to elicit

testimony from a medical expert on the question (*Id.* at 9-13).  An impairment is medically

equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of

any listed impairment."  20 C.F.R. § 416.926(a).  If a claimant has an impairment described in

the Listings but one or more of the findings specified is lacking or is not as severe as specified,

the Commissioner "will find that [the claimant's] impairment is medically equivalent to that

listing if [the claimant has] other findings related to [the claimant's] impairment that are at least

of equal medical significance to the required criteria."  20 C.F.R. § 416.926(b)(1).  The burden is

on the claimant at step three to demonstrate medical equivalency.  *Sullivan v. Zebley*, 493 U.S.

521, 529-31 (1990).  To establish that an impairment equals a listed impairment, "a claimant

'must present medical findings equal in severity to *all* the criteria for the one most similar listed

impairment."  *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010) (quoting *Sullivan*, 493 U.S.

at 531) (emphasis in original).

At the time of the ALJ's decision, to meet Listing 12.05, a claimant must satisfy either

paragraph A or paragraph B which read as follows:

A. Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*        *        *

B. Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
a. Understand, remember, or apply information; or
b. Interact with others; or
c. Concentrate, persist, or maintain pace; or
d. Adapt or manage oneself; and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § 404, subpt. P, app. 1 § 12.05.

The ALJ reviewed both paragraph A and paragraph B of Listing 12.05 (Tr. 639-40).  The ALJ found that "these requirements are not met" largely relying on his analysis of Plaintiff's adaptive functional limitations (*Id.*).  Specifically, the ALJ found Plaintiff "retains the residual capacity to attend to personal care activities, prepare meals, do house work (e.g., do laundry, do dishes, take out trash), use public transportation, shop in stores, and socialize often with friends" (Tr. 639).  The ALJ further found, as it specifically relates to paragraph B, that Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70" (Tr. 640).  In so concluding, the ALJ noted that Plaintiff attained a Full Scale IQ score of 62 in April 2006 but that "the validity of such score is questionable given results to subsequent testing" (*Id.*).  Specifically, the ALJ highlighted Plaintiff's results from a June 2008 WAIS-III[3] test resulting in a Verbal IQ score of 74, a Performance IQ score of 74, and a Full Scale IQ score of 72 (*Id.*).  The ALJ also found that Plaintiff does not have symptoms in the B criteria areas---understanding, remembering, or applying information; interacting with others; concentrating, persisting, or

---

[3] Wechsler Adult Intelligence Scales, Third Edition.

maintaining pace; or adapting or managing themselves (*Id.*).  Indeed, the ALJ conducted a full review of the paragraph B criteria in his analysis of Listings 12.04 and 12.06 which is closely aligned with the criteria required under 12.05 paragraph B, section 2 (Tr. 637-38).  Addressing the paragraph B criteria, the ALJ found Plaintiff to have moderate limitation in the area of understanding, remember, or applying information; mild limitation in the area of interacting with others; moderate limitation in the area of concentrating, persisting, or maintain pace; and moderate limitation in the area of adapting of managing oneself (*Id.*).  While the ALJ noted several areas of limitation including Plaintiff's need for a slowed pace of production and need for an individualized education program in high school, the ALJ found Plaintiff able to care for herself and others including her nephew and able to get along well with others (*Id.*).  The ALJ did not explicitly address Listing 12.05 equivalency.  The ALJ concluded, "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 637).

Plaintiff relies heavily on *Hesseltine v. Colvin* for the proposition that because the ALJ summarily assessed medical equivalence and did not discuss the POMS guidelines, this Court "cannot say whether there was sufficient evidence to support [the ALJ's] decision."  800 F.3d 461, 466 (8th Cir. 2015) (citing *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)).  The ALJ in *Hesseltine* found that the claimant did not meet or medically equal a Listing 12.05C requirement that the claimant have an IQ below 70 (claimant's IQ was tested at 71 and 72).  *Id.*  The POMS guidelines specifically stated that "slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders . . . may support an equivalence determination."  *Id.* at 465.  As noted by Defendant, with the changes to the mental health impairment regulations in 2017,

this section of the POMS has been archived and an explicit explanation of the equivalency

determination is no longer required under SSR 17-2p.  Under SSR 17-2p:

> If an [ALJ] ... believes that the evidence already received in the record does not
> reasonably support a finding that the individual's impairment(s) medically equals a listed
> impairment, the [the ALJ] is not required to articulate specific evidence supporting his or
> her finding that the individual's impairment(s) does not medically equal a listed
> impairment.  Generally, a statement that the individual's impairment(s) does not
> medically equal a listed impairment constitutes sufficient articulation for this finding.  An
> [ALJ's] articulation of the reason(s) why the individual is or is not disabled at a later step
> in the sequential evaluation process will provide rationale that is sufficient for a
> subsequent reviewer or court to determine the basis for the finding about medical
> equivalence at step 3.

SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).  Regardless, the Court must still

determine whether substantial evidence supports the ALJ's decision under *Hesseltine*.  800 F.3d

at 466.

Here, the ALJ thoroughly considered the Listing and carefully reviewed the medical

evidence.  That the ALJ's analysis was specifically directed at the issue of meeting the Listing,

as opposed to medical equivalence, does not merit reversal.  As a preliminary matter, to the

extent Plaintiff argues that the ALJ improperly relied on a comparison of strengths to weaknesses

instead of considering the sufficiency of Plaintiff's adaptive deficits only, the Court finds this

argument unavailing.  In determining a claimant's "significant deficits in adaptive functioning,"

Social Security regulations direct the ALJ to "consider all of [a claimant's] activities and [her]

performance of them" as "[a claimant] may demonstrate both strengths and deficits in [] adaptive

functioning."  20 C.F.R. § 404, subpt. P, app. 1 § 12.00(H)(3)(d).  Indeed, here, the ALJ properly

considered both Plaintiff's strengths and limitations in determining Plaintiff's adaptive deficits.

*Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (finding plaintiff's ability to read, write,

pay bills, count change, groom herself, cook, perform household chores with her daughter's help,

shop, go out to eat, attend church, and talk on the phone to be inconsistent with the deficits in

adaptive functioning contemplated by the prior intellectual disability listing, 12.05C).  Contrary to Plaintiff's assertion, as addressed above, the ALJ found Plaintiff to be limited in all areas of functioning covered by the paragraph B criteria.  Of note, the ALJ considered her IQ scores and her need for an individualized education program in school (Tr. 638).  The ALJ also noted Plaintiff's mild difficulty in the area of social functioning as a result of her anxiety as well as her moderate difficulty in the area of maintaining concentration as evidence suggested she would need a slowed pace of production (*Id.*).  While Plaintiff highlights other adaptive deficits including problems understanding written directions, performing math calculations, living independently, navigating public transportation unaided, and remembering simple facts, an ALJ need not list or address each and every limitation in his decision. (Doc. 15 at 12 (citing Tr. 306-308, 310, 364, 367-68, 371-372, 382-383, 385, 390, 400, 403, 413, 415-418, 602-603, 627, 629, 661-663, 667, 670-673)).  In fact, the ALJ mentioned a number of these limitations elsewhere in his opinion and noted that he had accounted for them in his RFC determination.  For example, the ALJ highlighted the December 2013 report of Dr. Kinnach Natani, Ph.D., a consultative examiner (Tr. 642).  As noted by the ALJ, Dr. Natani opined that Plaintiff has an inability to perform simple mathematical calculations involving subtraction (*Id.*).  Upon a full review of Dr. Natani's report including this limitation as well as other relatively normal findings, the ALJ found "this limitation set is included in the residual functional capacity in this decision" (*Id.*).  Although the record does not include a more recent medical opinion regarding Plaintiff's cognitive deficits or intellectual testing after 2008, intellectual disability is not traditionally a progressive disease and an ALJ is not required to obtain medical expert evidence or medical support staff input prior to making a step 3 finding that a claimant's medical impairment does not medically equal a listed impairment if the ALJ believes that the evidence does not reasonably

14

support a finding that the claimant's impairment medically equals a listed impairment.  SSR 17-2p.  Here, the ALJ properly relied on the intellectual testing results of record, the medical opinion evidence of record, and Plaintiff's activities of daily living including indicia of adaptive deficits.  Based on the ALJ's decision and a complete and thorough review of the administrative record, this Court finds that substantial evidence supports the ALJ's decision that Plaintiff's impairments did not medically equal Listing 12.05.

## C. The Law of the Case

Finally, Plaintiff asserts that the ALJ's failure to follow this Court's remand Order warrants remand under the law of the case doctrine (Doc. 15 at 13-15).  Essentially, Plaintiff argues that because of the errors identified above, Defendant failed to follow the Court's prior remand Order.  "The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings." *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010).  The doctrine also applies to administrative agencies on remand.  *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir.1997).  A reviewing court may remand with or without limitations.  *United States v. Bates*, 614 F.3d 490, 494 (8th Cir. 2010).  In Social Security cases, the permissible scope of the ALJ's decision after remand is guided by the instructions from the Appeals Council.  *Gomez v. Colvin*, No. C14-3073-CJW, 2016 WL 799323, at *5 (N.D. Iowa Feb. 29, 2016).

On appeal by Plaintiff to the United States District Court for the Eastern District of Missouri, the Honorable Henry Edward Autrey reversed and remanded the case on March 30, 2014 (Tr. 758-64).  Before Judge Autrey, Plaintiff argued that: (1) the ALJ erred in relying on the Vocational Expert's ("VE") testimony, although the hypothetical question differed significantly from the RFC finding; (2) the ALJ erred in failing to ask the VE if there were

conflicts between his testimony and the DOT; and (3) the ALJ erred in failing to consider

whether Plaintiff's borderline intellectual functioning equaled listing 12.05 (Tr. 762).  Judge

Autrey found:

> Defendant argues that none of the alleged errors are harmless, and attempts to establish
> that the decision is supported by substantial evidence on the record. The Court disagrees.
> Under applicable law, the ALJ is required to pose hypothetical questions in accordance
> with the RFC finding.  The question posed by the ALJ allowed for the VE to consider
> jobs for which Plaintiff may not be capable of performing.

> Likewise, while the Commissioner argues that there were no conflicts between the VE's
> testimony and the DOT, and therefore, the fact that the ALJ did not ask the question is
> harmless, Plaintiff points out that there is indeed a significant conflict between the DOT
> and her level of education, which the ALJ asked the VE to consider.

> Plaintiff also urges consideration of the "adaptive-functioning inquiry on adaptive
> deficits" and "significant limitations in conceptual, social, or practical adaptive skills," as
> articulated in *Moore v. Texas*, 137 S.Ct. 1039 (2017).  The focus on adaptive deficits is
> consistent with the Social Security's concerns regarding updated medical understanding
> of intellectual disability.

(Tr. 762-63).  Judge Autrey thus concluded: "After careful examination of the record, the Court

finds the Commissioner's determination as detailed above is not supported by substantial

evidence on the record as a whole, and therefore, the decision will be reversed and remanded for

further consideration" (Tr. 763).  Upon receipt of Judge Autrey's Order, the Appeals' Council

issued a remand order which stated, in relevant part,

> The Appeals Council vacates the final decision of the Commissioner of Social Security
> and remands this case to an Administrative Law Judge for further proceedings consistent
> with the order of the Court.  …In compliance with the above, the Administrative Law
> Judge will offer the claimant the opportunity for a hearing and address the additional
> evidence submitted, take any further action need to complete the administrative record
> and issue a new decision.

(Tr. 770-71).

The Court finds that the law of the case doctrine does not apply in this instance.  Here,

Judge Autrey issued a general remand as the case was remanded for "further consideration" (Tr.

763).  Thus, the Appeals Council vacated the prior ALJ decision, and directed the ALJ to offer

Plaintiff the opportunity for a hearing, consider additional evidence, and issue a new decision.

After a second evidentiary hearing, the ALJ properly considered the entirety of the record and

issued a new opinion.  "When subsequent proceedings follow a general remand, the ALJ may

properly decide anything not foreclosed by the mandate."  *Gomez*, 2016 WL 799323, at *6

(internal quotation marks omitted).  The law of the case therefore did not apply in this instance.

Regardless, as addressed in significant detail above, the ALJ's decision is based on substantial

evidence and is consistent with regulations and case law.

### V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as

a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 25th day of March, 2021.

    /s/ Noelle C. Collins                         
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE